IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BEVERLY REGINA GOODWIN, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.: 4:17-CV-0202 |
| | § | |
| NANCY A. BERRYHILL, | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM AND ORDER

Plaintiff Beverly Regina Goodwin filed this case under the Social Security Act, 42 U.S.C. §§ 405(g) for review of the Commissioner's final decision denying her request for social security disability insurance and supplemental security income benefits. Goodwin and the Commissioner filed cross-motions for summary judgment (Dkts. 8, 9). After considering the pleadings, the record, and the applicable law, the court **DENIES** Goodwin's motion and **AFFIRMS** the final decision of the Commissioner.[1]

### I. Background

#### 1. Factual and Administrative History

Goodwin filed a claim for social security disability insurance benefits and supplemental security income benefits on January 8, 2014. She alleges the onset disability as of January 8, 2014 due to her history of right breast cancer status post mastectomy, history of left breast cancer

---

[1] The parties have consented to the jurisdiction of this magistrate judge for all purposes, including entry of final judgment. Dkt. 12.

status post mastectomy 1994, chemotherapy, reconstructive surgery, diabetes mellitus, obesity, asthma, carpal tunnel syndrome, allergic rhinitis, hypertension, tarsal tunnel syndrome, and ongoing reconstructive surgery. Dkt. 9 at 2. Her claim was denied on initial review and reconsideration. The administrative law judge (ALJ) held a hearing on June 8, 2015, at which Goodwin, a vocational expert, and a medical expert testified. The ALJ issued an unfavorable decision on July 17, 2015. The Appeals Council denied review on November 15, 2016, and the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.984(b)(2) and 416.1484(b)(2).

## 2. Standard for District Court Review of the Commissioner's Decision

Section 405(g) of the Act governs the standard of review in social security disability cases. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Federal court review of the Commissioner's final decision to deny Social Security benefits is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999).

With respect to all decisions other than conclusions of law,[2] "[i]f the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence has also been defined as "more than a mere scintilla and less than a preponderance." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (quoting *Newton v.*

---

[2] Conclusions of law are reviewed *de novo*. *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).

*Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). When reviewing the Commissioner's decision, the court does not reweigh the evidence, try the questions *de novo*, or substitute its own judgment for that of the Commissioner. *Masterson*, 309 F.3d at 272. Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Id.*. The courts strive for judicial review that is "deferential without being so obsequious as to be meaningless." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

The court weighs four types of evidence in the record when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir.1991); *Hamilton-Provost v. Colvin*, 605 Fed. App'x 233, 236 (5th Cir. 2015).

### 3. Disability Determination Standards

The ALJ must follow a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Waters*, 276 F.3d at 718. The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (citing 42 U.S.C. § 423(d)(1)(A)). A finding at any point in the five-step sequence that the claimant is disabled, or is not disabled, ends the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In the first step, the ALJ decides whether the claimant is currently working or "engaged in substantial gainful activity." Work is "substantial" if it involves doing significant physical or

mental activities, and "gainful" if it is the kind of work usually done for pay or profit. 20 C.F.R. §§ 404.1572, 416.972; *Copeland v. Colvin*, 771 F.3d 920, 924 (5th Cir. 2014).

In the second step, the ALJ must determine whether the claimant has a severe impairment. Under applicable regulations, an impairment is severe if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.20(c). The Fifth Circuit construes these regulations as setting forth the following standard: "an impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

If the claimant is found to have a severe impairment, the ALJ proceeds to the third step of the sequential analysis: whether the severe impairment meets or medically equals one of the listings in the regulation known as Appendix 1. 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets one of the listings in Appendix 1, the claimant is disabled. If the ALJ finds that the claimant's symptoms do not meet any listed impairment, the sequential analysis continues to the fourth step.

In step four, the ALJ must decide whether the claimant can still perform his past relevant work by determining the claimant's "residual functional capacity" (RFC). "The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments." *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. 404.1545). The ALJ must base the RFC determination on the record as a whole and must

4

consider all of a claimant's impairments, including those that are not severe. *Id.*; 20 C.F.R. §§ 404.1520(e) and 404.1545; *see also Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990).

The claimant bears the burden to prove disability at steps one through four, meaning the claimant must prove she is not currently working and is no longer capable of performing her past relevant work. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). If the claimant meets her burden, the burden shifts to the commissioner at step five to show that the "claimant is capable of engaging in some type of alternative work that exists in the national economy." *Id.* Thus, in order for the Commissioner to find in step five that the claimant is not disabled, the record must contain evidence demonstrating that other work exists in significant numbers in the national economy, and that the claimant can do that work given her RFC, age, education, and work experience. *Fraga v. Brown*, 810 F.2d 1296, 1304 (5th Cir. 1998).

### 4. The ALJ's Decision

The ALJ performed the standard 5-step sequential analysis. The ALJ found that Goodwin met the insured status requirements of the Social Security Act through December 31, 2014, and had not engaged in substantial gainful activity since January 8, 2014, her alleged onset date. Dkt. 3-3 at 24. The ALJ found that Goodwin had the following severe impairments: "history of right breast cancer diagnosed in December 2013 status-post mastectomy; history of left breast cancer diagnosed in February 1994 status-post mastectomy, chemotherapy, and reconstructive surgery without evidence of left breast cancer recurrence; diabetes mellitus, type II; obesity; asthma; carpal tunnel syndrome; allergic rhinitis; and hypertension." Dkt. 3-3 at 25.

The ALJ further found that Goodwin did not have an impairment that meets or equals a listing. The ALJ found Goodwin retained the residual functional capacity (RFC) to perform light work, with the following additional limitations: "occasionally climb ramps or stairs; occasionally

5

overhead reach; occasionally balance, stoop, kneel, crouch, and crawl; occasionally lift overhead, bilaterally; frequently handle, finger, and feel; no exposure to environmental irritants; avoid open heights and unprotected machinery; and avoid excessive heat." Dkt. 3-3 at 27. After determining Goodwin's RFC, the ALJ concluded she could perform her past relevant work as a secretary and therefore was not under a disability from her alleged onset date of January 8, 2014 through July 17, 2015, the date of his decision.

## II. Analysis

Goodwin argues that the ALJ performed a conclusory RFC determination that did not account for limitations from all of her impairments, including her "reduced bilateral manual dexterity," tarsal tunnel syndrome, and ongoing reconstructive surgery, and this failure led to the ALJ posing an incomplete hypothetical to the vocational expert. Goodwin further contends the ALJ erred in his assessment of her credibility. Finally, Goodwin argues the ALJ failed to fully consider the demands of her past relevant work.

### 1. The ALJ's RFC determination

#### 1.A. The ALJ considered all limitations supported by the record in making his RFC determination

The "RFC assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005) (citing 20 C.F.R. § 404.1545(a)(1)). But, "[t]he relative weight to be given [to the] evidence is within the ALJ's discretion." *Chambliss v. Massanari*, 269 F.3d 520, 523 n.1 (5th Cir. 2001) (citation omitted).

Goodwin's assertion that the ALJ's RFC determination was conclusory is contradicted by the ALJ's opinion itself, which includes a seven page "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and

6

nonmedical evidence (e.g., daily activities, observations)," as required by SSR 96-8p. 1996 WL 374184 *7; Dkt. 3-3 at 27-33. The ALJ cited Goodwin's hearing testimony that she was left with permanent weakness due to the removal of muscles during her two mastectomies and had not yet undergone right breast reconstruction; that she suffered wrist pain bilaterally due to carpal tunnel syndrome and had limited ability to lift that was worse in her left hand; that she was limited in the ability to walk, stand, and lift due to tarsal tunnel syndrome; that she went to the emergency room once due to an asthma attack; that she suffered environmental allergies and her medication caused drowsiness; and that she had hypertension that caused fatigue and edema. Dkt. 3-3 at 27-28. Yet, as the ALJ noted, the evidence also established that Goodwin lives alone in an upstairs apartment; does her own housework, although she has pain; attends her own personal hygiene; shops in stores a couple times per week; reads and watches television daily; socializes with friends and attends movies and sporting events; and was a full-time student studying petroleum engineering. *Id.* at 28-30 (citing her function report (Dkt. 3-7 at 38-51) and hearing testimony). The ALJ specifically found that Goodwin's allegations regarding her inability to lift any items is contradicted by her ability to do her own shopping. *Id.* Her allegations regarding difficulty using her hands is inconsistent with her statement to her treating physician that she enjoyed playing computer games. *Id.*; Dkt. 3-11 at 19. Although Goodwin claims significant weakness and imbalance due to muscle loss from her left breast surgery, she engaged in substantial gainful employment since that surgery in 1994, and no medical records reflect balance issues. She also never complained to a medical provider about chest pain. Goodwin testified that she expected future limitations during a recovery period after right breast reconstruction, but there is nothing in the record to indicate current limitations in her actual functioning. Dkt. 3-3 at 29.

7

In reaching his RFC decision, the ALJ properly relied upon the testimony of a medical consultant, Dr. Philip Bentlif, that the medical records were consistent with the ability to perform light work. As the ALJ noted, Dr. Bentlif's opinion regarding Goodwin's manual dexterity was consistent with the finding by Dr. Farzana Sahi in his consultative medical examination that Goodwin's "grip strength was good bilaterally." *See* Dkt. 3-8 at 60. The ALJ correctly gave limited weight to Sahi's opinion that "the patient has severe restriction," because it is vague and does not specify any type of restriction, and also is not supported by any of his examination findings. Dkt. 3-3 at 32. The ALJ also gave some weight to state agency medical consultants, Drs. Lee and Samaratunga, who found that Goodwin had the RFC to perform light work with some additional restrictions, but gave greater weight to the opinion of Dr. Bentlif because he had access to additional medical records submitted after the state agency consultants' reviews. *Id.* It is the job of the ALJ to weigh the medical opinion testimony. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (the ALJ is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly). Goodwin cites no medical evidence to support her alleged limitations on her ability to do light work due to reduced bilateral manual dexterity, tarsal tunnel syndrome, and ongoing reconstructive surgery. In sum, the court finds the ALJ's RFC determination is not based on a legal error and is supported by substantial evidence.

### 1.B. The hypothetical question

An ALJ's hypothetical question to a vocational expert must reasonably incorporate all the limitations recognized by the ALJ, and the claimant or his representative must be afforded the opportunity to correct any deficiencies in the question. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002). The hypothetical question the ALJ proposed to the vocational expert, Susan Rapant, contained all of the limitations from

8

Goodwin's impairments that were testified to by Dr. Bentlif and incorporated into the ALJ's RFC determination. Dkt. 3-3 at 70-71. Goodwin's counsel cross-examined Rapant. Dkt. 3-3 at 72-73. Thus, Goodwin can show no error on this basis.

### 1.C. The ALJ's credibility assessment.

When a claimant alleges symptoms, such as pain, limiting her ability to work, he must establish a medically determinable impairment capable of producing the pain or other symptoms. *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995) (citing 20 C.F.R. §404.1529). Once such a medical impairment is established, the subjective complaints must be considered along with the medical evidence in determining the individual's work capacity. The regulations instruct that a claimant's statements about the intensity, persistence, or functionally limiting effects of the symptoms must not be rejected "solely because the available objective medical evidence does not substantiate [those] statements." 20 C.F.R. §404.1529(c)(2); 20 C.F.R. §416.929(c)(2). When such statements are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire case record. SSR 96-7p, 1996 WL 374186 at *3. An ALJ's credibility findings on a claimant's subjective complaints are entitled to deference. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

In determining Goodwin's RFC, the ALJ concluded that her "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Dkt. 3-3 at 29. The ALJ did not stop his credibility analysis with this boilerplate statement. He specifically explained ways in which Goodwin's testimony regarding "the intensity, persistence and limiting effects" of her symptoms were inconsistent with her reported activities of daily living and the medical records. For instance, in addition to the

9

inconsistencies noted above, the ALJ noted that medical records showed that Goodwin was recovering well from her right breast mastectomy in August 2014 and while there was "a persistent area of separation along the mastectomy incision" shortly after surgery, no records indicated any ongoing problems with the incision. In addition, although Goodwin alleged disability since January 8, 2014, her April 2014 function report indicated she was independent in her activities of daily living. Dkt. 3-7 at 38-51. Records from December 2014 showed that while she complained of tiredness, she attended classes during the day as a full-time student studying petroleum engineering at Houston Community College. Dkt. 3-11 at 16-17. The ALJ explained that "the evidence cannot be fully reconciled with the level of pain and limiting effects of the impairments that the Claimant has alleged." Dkt. 3-3 at 32. He gave numerous examples, as discussed in the sections above, to support this statement. The court concludes that the ALJ did not err in assessing Goodwin's credibility.

### 2. Past relevant work

Goodwin cites SSR 82-62 for the proposition that an ALJ's decision that a claimant can perform a past relevant job must contain (1) a finding of fact as the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job/occupation; and (3) a finding of fact that the individual's RFC would permit a return to his past job or occupation. Dkt. 9 at 8-9. Goodwin contends that the ALJ's decision "omitted inquiry into, and a finding of fact as to, the physical and mental demands of plaintiff's past relevant work." Dkt. 9 at 9.

Here, the ALJ made a detailed finding as to Goodwin's RFC, as discussed above. The ALJ found that Goodwin's past work as a secretary qualified as past relevant work, and further found as follows:

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to

perform it as actually and generally performed. The undersigned accepted the vocational expert's opinion that the claimant's residual functional capacity would not preclude performance of the claimant's past relevant work as a secretary. Moreover, the undersigned reviewed the DOT and found no apparent conflict between the vocational expert's testimony and the DOT (SSR 00-4p).

Dkt. 3-3 at 34. The vocational expert testified that Goodwin's past work as a secretary at a law firm is covered by DOT 201.362-030, which classifies the job as sedentary, skilled work, and that, considering Goodwin's RFC, she could perform the job at the light or sedentary level. Dkt. 3-3 at 70. Essentially, Goodwin argues that the ALJ's RFC assessment is wrong, and therefore the conclusion that she could perform her past relevant work is also wrong. Because the court finds no error in the ALJ's RFC assessment, Goodwin's argument fails.

### III. Conclusion

The court concludes that the ALJ's decision is supported by substantial evidence and is not based on an error of law. Therefore, Goodwin's motion is denied and the Commissioner's decision denying benefits is affirmed.

Signed at Houston, Texas, on March 7th, 2018.

Christina A. Bryan
United States Magistrate Judge